### ROSENTHAL v. BRONX NAT. BANK et al.

(Circuit Court of Appeals, Second Circuit. March 21, 1916.)

#### No. 225.

BANKRUPTCY ☞166(4)—PREFERENCE—BELIEF OF CREDITOR.

Where a bank took a chattel mortgage covering the machinery and all movable property from an insolvent firm to secure a loan, the greater part of which was applied to unsecured notes of the firm held by the bank, but not yet due, and notes the security for which was insufficient, after the chief credit man of the bank had refused several applications for loans by the firm within a short time, knew that its account at the bank was depleted, and that many of its checks, some issued to employés for as little as $1, had been dishonored, and that the firm had evaded the bank's request for a statement, and had rendered no statement to a mercantile agency showing their assets and liabilities within the past year, the bank had reasonable cause to believe that the firm was insolvent, and that a preference would result from the giving of the chattel mortgages, so that it was voidable by the trustee, under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (Comp. St. 1913, § 9644).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251, 256; Dec. Dig. ☞166(4).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Marcus Rosenthal, as trustee in bankruptcy, against the Bronx National Bank and others, to set aside a chattel mortgage and recover the value of the property sold by defendant Bank thereunder. Decree for complainant (222 Fed. 83), and defendant Bank appeals. Affirmed.

Defendant Bronx National Bank appeals from final decree in favor of defendant, setting aside a chattel mortgage and awarding plaintiff the sum of $3,442, being the net value of the property covered by the mortgage.

Williams, Folsom & Strouse, of New York City (C. D. Folsom, of New York City, of counsel), for appellant.

E. L. Bondy, of New York City, for appellees.

Before COXE and ROGERS, Circuit Judges, and MAYER, District Judge.

MAYER, District Judge. On January 13, 1914, the bankrupts, trading as Oriental Lace Company, owed the Bronx National Bank about

$3,700. On that day they executed and delivered to the bank a chattel mortgage for $4,200, and, with the proceeds, paid the amount which they owed the bank. The trustee assails this transaction as coming within section 60b of the Bankruptcy Law, on the ground that the bankrupts were then insolvent, and that the bank knew or had reasonable cause to believe they were insolvent, and that the transfer by way of chattel mortgage would effect a preference in favor of the bank.

The adjudication in bankruptcy was against the bankrupts both as individuals and as copartners. The partnership had been banking with defendant on and off since about January, 1912. In January, 1913, relations ceased, but were resumed in May, 1913. In addition to the use of an ordinary checking account, the partnership from time to time borrowed money, usually on the security of outstanding accounts receivable. In November, 1913, at a time when the condition of the bankrupts must have seemed satisfactory, the bankrupts borrowed $2,000 from the bank, without security, for which they gave two notes, of $1,000 each, dated November 26, 1913, and payable respectively January 26, 1914, and February 26, 1914. Throughout their relations with the bank, the bankrupts from time to time had overdrawn their account, but apparently made these overdrafts good.

In December, 1913, however, there followed in rapid succession, events sufficient to warn any bank official of ordinary intelligence that the bankrupts were in a precarious financial condition. Altman, one of the bankrupts, applied to Quinn, vice president and credit man of the bank, for a loan of $5,000, and discussed, in that connection, giving a chattel mortgage. Quinn refused to make the loan because, as Altman testified, "he did not care to go any further with loans, since we owed him so much money." Kolbe, the cashier of the bank, in December, 1913, and January, 1914, was constantly insisting that Altman's firm should make good a considerable number of dishonored checks, or, as Kolbe put it:

"There is a bunch of checks come in here; and you haven't a cent of money in the bank there, and the checks are varying from $1 up. I am going to turn down every one of them if you don't make good."

These small checks had been given to laborers or wage-earners in the employ of the bankrupts. About the middle of December, 1913, Quinn asked Altman for a new financial statement. This, for obvious reasons, was never furnished by Altman, and the request was evaded. Quinn testified that in December he called upon Dun & Co. for a financial report of the Oriental Lace Company; but this report, while dated December 18, 1913, could not have enlightened Quinn, and, on the contrary, should have aroused inquiry, because it did not contain any data as to assets and liabilities later than December 3, 1912—about a year previous.

Altman, evidently in desperate straits, was persistent, and again offered a chattel mortgage to secure a loan. Quinn now changed his attitude, undoubtedly in a desire to secure the bank against a failing debtor. He concluded to make a loan of $4,200, secured by a chattel mortgage covering machinery, plant, and tangible assets, except merchandise. With the proceeds of the loan, the Oriental Lace Company

paid the bank the $2,000 owed on notes, not yet due, took up about $1,573 balance due the bank and secured by assigned accounts which had become stale and evidently worthless, and the remaining amount of about $627 went to the bankrupts and was used by them in paying debts and making good dishonored checks. The mortgage was executed January 12, 1914, and filed January 13, 1914. The inevitable result of filing a chattel mortgage covering all the bankrupts' available mortgageable property followed on January 16, 1914, when a petition in bankruptcy was filed against the bankrupts individually and as copartners.

From the foregoing facts, which are somewhat more fully set forth in the opinion of the District Judge, it is apparent that Quinn was placed on his guard, and that he must have believed or, in any event, had reasonable cause to believe, that the bankrupts were insolvent. The lending of a little extra cash is an expedient well known to those familiar with transactions of this kind. Its purpose is to give an appearance of good faith and of present new consideration to a transaction which has for its object the securing of an existing or past-due indebtedness. In this case the chattel mortgage amply secured the loan of $4,200, and would have fully protected the bank if it had withstood the assault of the trustee. It is not often that so clear and convincing a case of preferential transfer is made out as the trustee has here proved.

It is insisted, however, that, in any event, the value of the mortgaged chattels as found by the District Court was excessive. With this we do not agree. There was evidence upon which the trial court could have placed the value at a higher figure. His conclusion on that subject, with the credit he allowed the bank, including the expense of moving the chattels, was conservative, and was fully supported by the evidence.

Other questions raised need not be discussed, and are sufficiently considered in the opinion of the District Judge.

The decree is affirmed, with costs.